Filed 3/5/24  Lynn v. AAA Life Insurance Company CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WYNZELL LYNN, JR.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AAA LIFE INSURANCE COMPANY et al.,<br><br>Defendants and Respondents. | F085402<br><br>(Kern. Super. Ct. No. BCV-22-100942)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING (CHANGE IN JUDGMENT)** |

Appellant's petition for rehearing filed on February 26, 2024, in the above referenced case is hereby denied.  It is ordered that the opinion filed herein on February 9, 2024, be modified as follows:

1.  On page 16, replace the second sentence of the first full paragraph with the following:

    It can reasonably be interpreted as being coextensive with the scope of coverage expressly outlined in the second paragraph.

2.  On page 21, in the paragraph starting with "In his supplemental brief," replace AA in the second sentence with AAA.  The sentence shall read as follows:

    More specifically, he notes he can properly allege that Webb and AAA "knew or suspected that Mr. Lynn misunderstood the [phrase] 'the Insured's … children' in the first paragraph of the Child Term Rider's definition of '[E]ligible Child' … as meaning that Mahki, though not his biological child,

would be covered," because he had "specifically asked for coverage that included all of his children living in his household with him as his dependents, regardless of their blood relation."

3. On page 23, delete the first full paragraph beginning with "Here the trial court sustained," and insert the following paragraph in its place:

Here, the trial court sustained the demurrer as to plaintiff's first cause of action for breach of the covenant based on its view that the FAC failed to plead an underlying breach of contract—i.e., that no benefits were due for Bowen's death. Although we reversed, above, the trial court's dismissal of the FAC's cause of action for breach of contract on an express contract theory, defendants argue in the alternative that plaintiff cannot plead this tort claim (i.e., breach of the covenant) because AAA's interpretation of the rider was reasonable and therefore shielded by the genuine dispute doctrine. Plaintiff, for his part, points to the FAC's detailed allegations of bad faith with respect to AAA's handling of his claim. Specifically, plaintiff argues that AAA's claim handling was inadequate and unreasonable in this instance because, in denying coverage, AAA did not acknowledge and take into account the representations regarding the scope of the rider made by Webb, its agent, to Lynn, both *before* Lynn purchased the rider as well as *after* Mahki Bowen's death (when Lynn contacted Webb to make a claim under the rider). Given that the reasonableness of an insurer's denial of benefits is ordinarily a question of fact and that a determination of reasonableness here encompasses the factual issues of any representations made by Webb and AAA's investigation and consideration thereof, we reverse the trial court's dismissal of plaintiff's breach of covenant claim.

4. On page 31, delete the disposition and insert following:

**<u>DISPOSITION</u>**

The judgment of dismissal is reversed. The matter is remanded with instructions to the trial court to vacate the order sustaining the demurrer without leave to amend and to enter a new order overruling the demurrer to the breach of contract (express contract theory) and breach of the covenant of good faith and fair dealing causes of action, with leave for plaintiff to further amend his complaint to allege, if he is able, causes of action against AAA for breach of contract by estoppel, against AAA and Webb for violation of Business and Professions Code section 17200 et seq., against AAA and Webb for negligent misrepresentation, against AAA and Webb for negligence, and for reformation based on mutual mistake. Lynn is awarded his costs on appeal.

This modification changes the judgment.

2.

SMITH, J.

WE CONCUR:


DETJEN, Acting P. J.


FRANSON, J.

Filed 2/9/24  Lynn v. AAA Life Insurance Company CA5 (unmodified opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WYNZELL LYNN, JR., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> AAA LIFE INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | F085402 <br><br> (Super. Ct. No. BCV-22-100942) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Law Offices of Richard A. Jones, Richard A. Jones and Jarrick S. Goldhamer, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Elise D. Klein, for Defendants and Respondents.

-ooOoo-

Wynzell Lynn, Jr., is the plaintiff in this breach of insurance contract case and defendants are AAA Life Insurance Company and its agent, Craigory Webb. Plaintiff appeals from a final judgment of dismissal that was entered after the trial court struck certain causes of action in plaintiff's operative complaint and sustained the defendants' demurrer as to other causes of action, without leave to amend. We reverse the judgment of dismissal and remand the matter for further proceedings.

## FACTUAL BACKGROUND[1]

In April 2020, plaintiff purchased from defendant AAA Life Insurance Company (AAA) a life insurance policy for himself, along with a child term rider (rider) providing up to $10,000 in coverage per insured child. Plaintiff purchased the policy and rider from defendant Craigory Webb, an AAA agent who "held himself out as a specialist in life insurance." According to the First Amended Complaint (FAC), the operative complaint in this matter, plaintiff understood from his prepurchase conversations with Webb that the rider would cover all of the children in plaintiff's household, even those without a biological or legally defined relationship (i.e., as an adopted child, foster child, or stepchild) to him. However, when one of the children in plaintiff's household—17-year-old Mahki Bowen—was murdered on November 18, 2020, while the rider was in effect, AAA rejected plaintiff's claim for coverage because Bowen was not plaintiff's biological or legally recognized child (i.e., adopted child, foster child, or stepchild).

When plaintiff first contacted Webb about purchasing AAA life insurance in April 2020, plaintiff lived with his fiancée, as they had done for more than 10 years, "as a blended family." Within their household were four children under the age of 19: three with plaintiff's surname, plus Bowen, who was the biological child of plaintiff's fiancée and another man. Bowen's biological father had died in 2007, when Bowen was four

---

[1] The facts outlined in this section are drawn from allegations of the operative complaint.

2.

years old, and Bowen had lived in plaintiff's household, as part of plaintiff's family, since he was about six years old. Although the FAC alleges that Bowen "was [plaintiff]'s child since he was approximately six years old," all agree that Bowen was not plaintiff's biological, step, adopted, or foster child.

"By phone call and email, [plaintiff] expressed to [Webb] his desire to purchase life insurance coverage that included coverage for all the children in his household, including but not limited to … Bowen." "Plaintiff informed [Webb] of his needs and requirements in seeking life insurance coverage, includ[ing] to provide coverage for all of his children in his household, some of wh[om] were not biologically related to him. Specifically, [plaintiff] disclosed to [Webb] the blended family that made up his household and specifically inquired if the child rider would apply to all the children in [plaintiff]'s household." "When [plaintiff] informed [Webb] of the blended mix of children he had in his household [plaintiff] was assured by [Webb] that all of the children under 19 years of age in his household as of the effective date of the policy would be covered under the Child Term Rider to the policy." "[Plaintiff] was informed that children did not need to be blood relatives, a step-child or legally adopted to be covered at the inception/binding of the policy." In an April 27, 2020 email (the only alleged written prepurchase communication between Webb and plaintiff), Webb stated, " 'the rider covers all your children for $7.00.' " Plaintiff replied that he wanted to purchase the rider.

Plaintiff became the named insured on the AAA life insurance policy, including the rider, which went into effect on April 27 or April 28, 2020.[2] The three-page rider, which was attached to the FAC, contained the following relevant provisions. The rider "provides term life insurance coverage for each Insured Child." An "Insured Child" is

_____

[2] The FAC alternately lists both dates, and the policy itself is not part of the record; but the exact inception date is immaterial.

3.

defined as "[a]n Eligible Child whose coverage has become effective under this Rider." The contract interpretation issue central to this appeal arises from two paragraphs in the rider that define the term, "Eligible Child." The paragraphs at issue state:

> "Eligible Child – An Eligible Child includes all of the Insured's unmarried children who are at least 15 days old and under age 19 on the date coverage first becomes effective under this Rider. An Eligible Child must be dependent upon the Insured for support and living within the Insured's household or attending an educational institution as a full-time or part-time student.
>
> "In addition, an Eligible Child includes:
>
> 1. A child who is at least 15 days old and born to the Insured while this Rider is in force; or
> 2. A child between 15 days and age 19 years who is legally adopted by the Insured, becomes a stepchild or becomes a court-appointed foster child of the Insured while this Rider is in force."

As reflected above, the first paragraph defines "Eligible Child" generally or broadly as "all of the Insured's … children," *as of the policy's first effective date* and, further, sets forth the *conditions* under which a child encompassed in the broad definition would ultimately be considered an "Eligible Child." The second paragraph (beginning with "In addition" and encompassing the two numbered subparagraphs), which concerns the period after the rider has taken effect but remains "in force," defines "Eligible Child," in pertinent part, to include any child born to the insured or who is adopted by him or becomes his stepchild or foster child. For purposes of our analysis here, we need not further interpret the substance or scope of the definition of "Eligible Child" in the second paragraph. Suffice it to say that the latter definition, by its terms, encompasses the specified categories of children and applies after the policy's effective date and for the duration that the policy remains "in force." In our analysis, we will refer to the two provisions (that is, the first one that is triggered at the inception of the policy and the second one that applies thereafter) as the "first paragraph" and "second paragraph," respectively.

4.

In November 2020, about seven months after plaintiff's policy became effective, tragically, Bowen was fatally shot. On the date of his death, Bowen was 17 years old, unmarried, financially dependent on plaintiff, and living in plaintiff's household. Plaintiff contacted Webb to inform him of the death, and Webb "again represented to [plaintiff] that the Child Term Rider would provide coverage" and told plaintiff how he could initiate his claim. One week after Bowen's death, plaintiff submitted a claim for coverage to AAA. To prove Bowen's financial dependence, plaintiff enclosed his 2019 federal and state income tax returns listing Bowen as a qualifying dependent.

Bowen's funeral was scheduled within three weeks of his death. The day before the funeral, the funeral home informed plaintiff that AAA would not make payment under the rider and demanded plaintiff pay in full. Plaintiff paid the full cost of the funeral service and burial, which exceeded $10,000. More than one year later, in February 2022, AAA formally denied plaintiff's claim under the rider, stating in its final rejection letter that Bowen was "not a 'qualifying child.' "

**PROCEDURAL HISTORY**

In April 2022, plaintiff initiated the instant lawsuit against AAA and Webb for denying benefits for Bowen's death, under the rider. In his initial complaint, plaintiff asserted four causes of action for: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract; (3) violation of Business and Professions Code section 17500 [false advertising practices], part of what is commonly termed the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.); and (4) declaratory relief.

Defendants filed a general demurrer, asserting that plaintiff had failed to state any viable cause of action. After a hearing, the trial court sustained the demurrer, granting plaintiff leave to amend within 20 days. Although the register of actions reflects that defense counsel was to prepare a post-hearing proposed order pursuant to California Rules of Court, rule 3.1312, there is no written order memorializing the trial court's

sustainment of defendants' first demurrer; nor is there a transcript of the hearing on defendants' first demurrer.

Just over one week after the hearing, plaintiff filed the FAC (the factual allegations of the FAC are set forth in the factual background section above). The FAC again asserted causes of action for breach of the covenant of good faith and fair dealing, breach of contract, and declaratory relief—but it added two new causes of action: one for fraud, and one for violation of the UCL, Business and Professions Code section 17200 et seq. (UCL 17200), in place of the prior UCL section 17500 claim. Altogether, the FAC asserted the following five causes of action: (1) breach of the covenant of good faith and fair dealing against AAA only; (2) breach of contract against AAA only; (3) fraud against both AAA and Webb; (4) violation of UCL 17200 against both AAA and Webb; and (5) a declaration of plaintiff's right to coverage against AAA.

Defendants filed another general demurrer, along with a motion to strike part of the FAC's prayer for relief. In their demurrer, defendants again argued that all causes of action failed to state a claim for relief; and they also argued the newly added fraud and UCL 17200 causes of action should be dismissed for exceeding the scope of amendment authorized by the trial court's prior order.

At the hearing on the demurrer, the trial court announced its tentative ruling, which it then adopted after receiving argument from both sides. As to the second cause of action, breach of contract, the court sustained the demurrer without leave to amend on grounds the FAC failed to allege that Bowen was an insured child under the rider— subsequently explaining that Bowen was not plaintiff's biological, step, adopted, or foster child. The court also sustained the demurrer without leave to amend as to the first cause of action, breach of the covenant of good faith and fair dealing, for lack of any underlying breach of contract.

However, the court took a different approach to the third and fourth causes of action, the fraud and UCL 17200 claims. Defendants' demurrer challenged these claims

6.

on, among other grounds, the procedural ground that they exceeded the scope of amendment authorized by the court's previous order on the successful first demurrer. Since defendants made this challenge in their demurrer instead of in their concurrently filed motion to strike, the court "on its own motion" struck these causes of action for exceeding the scope of amendment previously authorized in its order on the successful first demurrer.[3]  As to these claims, the court then overruled the demurrer as moot.

Finally, the court sustained the demurrer as to the fifth cause of action, for declaratory relief, but granted leave to amend in case plaintiff could identify other children similarly situated to Bowen for whom there might still be a possibility of future harm (i.e., denial of coverage).[4]  Having disposed of all relevant causes of action, the court denied as moot defendants' companion motion to strike part of the FAC's prayer for relief.

The written post-hearing order (prepared by defendants) reflects the trial court's above rulings but omits any explanation of the court's reasoning.  The parties then stipulated to dismiss, without prejudice, the fifth cause of action for declaratory relief[5] and to have final judgment entered in favor of defendants.  Judgment was entered accordingly, and this appeal followed.

---

[3]  The court also observed, as an aside, that the fraud cause of action was defective at least inasmuch as it did not state who made the subject fraudulent representations, or when they were made.

[4]  Plaintiff expressly does not challenge the trial court's ruling on the fifth cause of action for declaratory relief.

[5]  The parties agreed that, "in light of the [c]ourt's ruling on the first four causes of action and the current ages of the remaining children of [p]laintiff who are not biologically related to [p]laintiff, there exists no further dispute between the parties to this matter in relation to the subject life insurance policy Child Term Rider."

## DISCUSSION

### I. Plaintiff's Arguments

Plaintiff raises three main arguments on appeal (we do not follow the order of arguments reflected in plaintiff's brief). First, plaintiff argues the trial court erred by failing to recognize the rider's definition of "Eligible Child" is ambiguous for purposes of his breach of contract claim, in that it is susceptible to two reasonable interpretations, including plaintiff's interpretation. Second, plaintiff argues the trial court abused its discretion in striking his fraud and UCL claims, sua sponte, for exceeding the scope of permissible amendment, without considering their merits. However, most of plaintiff's opening brief is devoted to his efforts to show that the FAC states, or can be amended to state, multiple viable causes of action on various legal theories—a showing he is entitled to attempt to make on appeal, even without having pressed each theory or cause of action (and without having formally requested leave to amend) in the trial court. (See Code Civ. Proc., § 472c, subd. (a); *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244-1245 (*Gutierrez*); *Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259-260 (*Dudley*).)

### II. Applicable Standards of Review

"When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez, supra*, 19 Cal.App.5th at p. 1242; see *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870 (*City of Dinuba*).) In doing so, we take as true all material facts properly pleaded, but do not assume the truth of contentions, deductions, or conclusions of law. (*Gutierrez*, at p. 1242.) In testing the sufficiency of a complaint, we are not limited to the plaintiff's pleaded theory of recovery, but instead must decide whether the " '*factual* allegations of the complaint are adequate to state a cause of action under any legal theory.' " (*Thompson v. Ioane* (2017)

11 Cal.App.5th 1180, 1190; see *City of Dinuba*, at p. 870.) The " 'any possible legal theory' standard encompasses a legal theory presented for the first time in an opening appellant's brief." (*Gutierrez*, at p. 1244.) "In short, an appellate court 'may consider new theories on appeal from the sustaining of a demurrer.' " (*Gutierrez*, at p. 1245.)

When a demurrer is sustained without leave to amend, we review the denial of leave for abuse of discretion. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.) It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend "if there is a reasonable possibility the plaintiff can amend the complaint to allege any cause of action." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "To prove such abuse of discretion, however, the plaintiff must demonstrate how the complaint can be amended. [Citation.] While such a showing can be made for the first time to the reviewing court [citation], it must be made." (*Smith*, at p. 711.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).)

Finally, a trial court's order striking a portion of a pleading for failure to follow procedural rules is reviewed for abuse of discretion. (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1497; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282.)

## III. Breach of Contract (Express Contract Theory)

Plaintiff argues the FAC states a viable claim for breach of contract on an express contract theory.[6] We agree.

_____

[6] This court ordered the parties to submit supplemental briefing on this issue, among others.

### A. *Applicable Legal Framework*

The elements of a cause of action for breach of contract are: (1) the existence of a contract, (2) the plaintiff's performance under the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to the plaintiff. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.) The trial court sustained the demurrer for failure to plead a breach of the rider by AAA, and defendant's breach is the only element at issue as to this cause of action, in this appeal.[7] We agree with the parties that the trial court's statements at the hearing indicate it accepted defendants' argument that Bowen could not be an "Eligible Child" under the rider because he was not plaintiff's biological, step, adopted, or foster child and, therefore, AAA did not breach the contract in denying coverage for Bowen. Plaintiff argues the trial court erroneously reached this conclusion by deeming the term "Eligible Child" unambiguous on its face, without considering the FAC's allegations as to why plaintiff's interpretation that Bowen was covered was reasonable in light of his prepurchase conversations with Webb.

Plaintiff directs us to *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, which sets forth the well-settled principles governing the interpretation of insurance policies under California law. The first, most basic, rule is that " ' "[i]f contractual language is clear and explicit, it governs." ' " (*Id.* at p. 321.) If, on the other hand, " 'the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect " 'the objectively reasonable expectations of the insured.' " ' " (*Ibid.*) "The policy must be examined as a whole, and in context, to determine whether an ambiguity exists." (*Id.* at p. 322.) Unless "used by the parties in a technical sense" or "a special meaning is given to them by usage," contract terms are to be understood in

---

**7** We disregard AAA's brief argument in a footnote that the FAC also failed to plead plaintiff's performance of all conditions precedent. (See *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419-420 [courts need not address arguments made in footnotes].)

their "ordinary and popular sense." (Civ. Code, § 1644; see *State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195 (*Continental Ins.*).) Whether a contract term is ambiguous is a question of law. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) A party's reasonable expectation of coverage is, likewise, a question of law. (*Oliver Machinery Co. v. United States Fid. & Guar. Co.* (1986) 187 Cal.App.3d 1510, 1518.)

### B. Analysis

Here, the definition of "Eligible Child" as it appears in the rider's first paragraph is, on its face, ambiguous, in that it is susceptible to more than one reasonable interpretation as to whom the term covers *as of the policy's first effective date.* (See *Minkler*, *supra*, 49 Cal.4th at p. 321.) The definition of this term as denoted in the first paragraph, can reasonably be read as the trial court read it, to limit coverage as of the policy's effective date, to children who meet all of the undisputed criteria and are the insured's *biological, adopted, step, or foster* children (that is, children who are encompassed in the categories specified in the second paragraph of the definition). The definition can also reasonably be read to provide coverage, as of the policy's effective date, for children who meet all of the undisputed criteria and are openly held out by the insured to be his children, consistent with California parentage law, despite not meeting the specific categories listed in the second paragraph. As discussed below, California parentage law creates a presumption that a person who openly holds out a child as his own is the child's natural parent. (See Fam. Code, § 7611, subd. (d); *R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 773.)[8]

---

[8] Section 7611, subdivision (d) of the Family Code, part of California's Uniform Parentage Act (§ 7600 et seq.), provides: "A person is presumed to be the natural parent of a child if [¶] … [¶] [t]he presumed parent receives the child into their home and openly holds out the child as their natural child."

11.

Because the definition of "Eligible Child" as of the rider's effective date is ambiguous, we must " 'interpret [it] to protect " 'the objectively reasonable expectations of the insured.' " ' " (See *Minkler*, *supra*, 49 Cal.4th at p. 321.) When the FAC's allegations as to the relationship between plaintiff and Bowen and as to the prepurchase representations by agent Webb are coupled with the lack of specification of qualifying parent-child relationships in the first paragraph's definition of "Eligible Child," plaintiff adequately pleads an objectively reasonable expectation of coverage for Bowen. To the extent the rider can reasonably be interpreted to provide coverage for a child with a relationship to the insured akin to Bowen's relationship with plaintiff, the FAC properly pleads the element of breach—the only element the trial court found missing.

Taking things from the top, the main issue is whether the rider's definition of "Eligible Child" in the first paragraph and applicable when coverage first becomes effective, is ambiguous. As explained earlier, the definition of "Eligible Child" consists of two paragraphs, the first of which discusses eligibility "on the date coverage first becomes effective under [the] Rider," and the second of which discusses eligibility "while [the] Rider is in force." Again, the full text of the first paragraph reads:

> "An Eligible Child includes all of the Insured's unmarried children who are at least 15 days old and under age 19 on the date coverage first becomes effective under this Rider. An Eligible Child must be dependent upon the Insured for support and living within the Insured's household or attending an educational institution as a full-time or part-time student."

There appears to be no dispute that, in order to be eligible for coverage "on the date coverage first becomes effective," the person to be covered must be (1) unmarried, (2) at least 15 days old and under age 19, (3) one of "the Insured's … children," (4) dependent on the insured for support, and (5) living within the insured's household or attending an educational institution.

Rather, the parties dispute the significance and the meaning of the phrase "all of the Insured's … children" as it appears in the first paragraph. Defendants argue this

12.

phrase plainly refers to the insured's "natural children" or "biological children" (they appear to use these terms interchangeably). Defendants contention that the phrase in question is limited to the insured's biological children is rather extreme. Such an interpretation seems implausible in light of the adjacent provisions of the second paragraph, which reads:

"In addition, an Eligible Child includes:

"1. A child who is at least 15 days old and born to the Insured while this Rider is in force; or
"2. A child between 15 days and age 19 years who is legally adopted by the Insured, becomes a stepchild or becomes a court-appointed foster child of the Insured while this Rider is in force."

All parties agree the second paragraph does not *directly* apply in this case because there was no change in Bowen's eligibility status "while [the] Rider [was] in force." However, as plaintiff persuasively suggests, the second paragraph impacts the meaning of the first because it presents a *stark contrast* by strictly specifying the parameters of the required relationship between the covered "child" and the "Insured." The second paragraph explicitly denotes four categories of children for whom coverage would automatically arise following the effective date of the policy and while it remained in force. More specifically, coverage would spontaneously arise for any child who (a) was "born to the Insured" and lived at least 15 days, (b) was legally adopted by the insured, (c) became a stepchild of the insured (presumably, through marriage), or (d) became a court-appointed foster child of the insured. The first paragraph, by contrast, indicates that "all of the Insured's … children" would be entitled to coverage at the policy's inception but does *not* further delimit or clarify the scope of this phrase.

Defendants' contention that the phrase "all of the Insured's … children" in the first paragraph refers to the insured's *biological* children alone, is implausible because such an interpretation would exclude any adopted, step, or foster children the insured might already have on the date the policy becomes effective. An interpretation of the

13.

rider to the effect it covers children who were adopted by the insured or became his stepchildren or court-appointed foster children *after* it took effect, but not the insured's existing adopted children, stepchildren, and court-appointed foster children as of its effective date, would be unreasonable. To avoid an absurd result, the phrase "all of the Insured's … children" in the first paragraph must be interpreted, as the trial court did, to encompass, at a minimum, the insured's biological children, adopted children, stepchildren, and court-appointed foster children as of the policy's first effective date.

As mentioned, the text of the first paragraph does not expressly clarify the scope of the phrase "all of the Insured's … children" as used therein. Significantly, in the trial court, defendants took a different position as to the scope of this phrase, than the position they posit on appeal. Defendants argued in the trial court that the first and second paragraphs should be read together as a single, unitary definition of eligibility—with the biological/legal categories in the second paragraph "clarif[ying]" the meaning of the phrase "the Insured's … children" in the first paragraph. Defendants' earlier reading— positing a unitary definition of eligibility—may be a reasonable one, but the definitional paragraphs can *also* reasonably be viewed as encompassing *distinct* definitions that apply based on whether the parent-child relationship at issue predates or postdates the policy's effective date.

The organizational structure of the paragraphs, with each one directed to a different temporal moment, when viewed in combination with the phrase "In addition" introducing the second paragraph, supports an interpretation that the "Eligible Child" definitions in the respective paragraphs are distinct, rather than perfectly overlapping, in scope. Read this way, the first paragraph can reasonably be interpreted to define "Eligible Child" at the inception of the policy to include any "unmarried" child, between the ages of 15 days and 19 years, who is openly held out by the "Insured" as his or her child, and who is "dependent upon the Insured for support and living within the Insured's household or attending an educational institution as a full-time or part-time student." As

14.

for the second paragraph, we need not interpret the scope of the second paragraph other than to acknowledge that it expressly defines "Eligible Child" to encompass, over the life of the policy, any child who is either born to the insured or is legally adopted by the insured or becomes a stepchild or court-appointed foster child of the insured, subject to specified age restrictions.

It stands to reason that the rider would cover, at the *inception of the policy*, a child who the insured openly held out as his or her own and supported financially, and who lived with the insured unless attending an educational institution, because in seeking to purchase an insurance policy providing coverage in the event of the death of the insured's children, the insured would reasonably intend for the policy to include any such child who was already part of the insured's household at the time. At the same time, the requirements that any "Eligible Child" must be dependent upon the insured for support and living within the insured's household unless attending an educational institution, would serve to ensure that the rider would not simply cover "any child who the insured subjectively regards as one of 'his' children," as suggested by AAA in its responsive brief. Similarly, it stands to reason that, with respect to *future* children, the policy would limit coverage to the specified categories of biological, adopted, step, or foster children of the insured, because doing so would circumscribe the pool of potentially covered children and because these types of parent-child relationships are readily ascertainable.

Moreover, the interpretation that the definition of "Eligible Child" in the rider's first paragraph encompasses any children the insured openly held out as his own finds support in California parentage law. Plaintiff correctly points out that, under California law, "[a] man who receives a child into his home and openly holds the child out as his natural child is presumed to be the natural father of the child." (*In re Nicholas H.* (2002) 28 Cal.4th 56, 58 [appeal from dependency proceeding]; see Fam. Code, § 7611, subd. (d) [providing that one way to be "presumed … the natural parent of a child" is if "[t]he presumed parent receives the child into their home and openly holds out the child

15.

as their natural child"].)  This presumption also applies beyond its traditional dependency/family law context.  (See, *e.g.*, *A.G. v. County of Los Angeles* (2018) 28 Cal.App.5th 373, 377-378 [applying Fam. Code, § 7611, subd. (d) to find standing for child to bring wrongful death action for death of non-biological father figure].)

In sum, we conclude the definition of "Eligible Child" in the first paragraph of the rider is ambiguous, in that it is reasonably susceptible to two interpretations.  It can reasonably be interpreted as being coextensive with the scope of coverage outlined in the second paragraph.  At the same time, it can reasonably be interpreted to include any children who the insured held out as his or her own as of the effective date of the policy, if those children were dependent on the insured for support and lived within the insured's household.  The FAC, liberally construed, indicates that plaintiff held Bowen out as his child; the FAC also alleges that Bowen lived in plaintiff's household and was dependent on plaintiff for support.  To the extent plaintiff openly held Bowen out to be his child, plaintiff's expectation of coverage for Bowen was objectively reasonable, in light of both Webb's assurances and their basis in the rider's text.  Accordingly, in light of its ambiguity, the definition of "Eligible Child" in the first paragraph must be construed to protect that expectation.  (See *Minkler*, *supra*, 49 Cal.4th at p. 321.)  So construed, the FAC adequately pleads the element of breach, and therefore the demurrer to the second cause of action should have been overruled.

## IV.    Breach of Contract by Estoppel

Plaintiff argues the FAC also alleges facts sufficient to state a claim for breach of contract under an estoppel theory.  We agree.

" 'There are four basic elements of equitable estoppel:  (1) The party to be estopped must have known the facts; (2) the party to be estopped must have intended that its conduct would be acted upon, or it must have acted so as to have given the party asserting estoppel the right to believe that it was so intended; (3) the party asserting estoppel must have been ignorant of the true state of facts; and (4) the party asserting

estoppel must have relied on the conduct to its injury.' " (*Komorsky v. Farmers Ins. Exchange* (2019) 33 Cal.App.5th 960, 972 (*Komorsky*).)

Defendants argue plaintiff cannot succeed on an estoppel theory because of the general rule that "where coverage does not exist under an insurance policy it cannot be created by estoppel." (*Komorsky*, *supra*, 33 Cal.App.5th at p. 972; see *Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1303; *Miller v. Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 755 ["Estoppel cannot be used to create coverage under an insurance policy where such coverage did not originally exist."]; *Aetna Casualty & Surety Co. v. Richmond* (1977) 76 Cal.App.3d 645, 652-653.) However, this rule is applied to prevent extensions of coverage based on insurers' *post-loss or post-liability* statements and conduct. The full statement of the rule repeated in the cases defendants cite is that " 'the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy *after the liability has been incurred or the loss sustained.*' " (*Aetna Casualty & Surety Co. v. Richmond*, *supra*, 76 Cal.App.3d at pp. 652-653, italics added.) Statements made during prepurchase negotiations, by contrast, can and do "estop[ ] the insurer from reliance on the coverage as stated in the issued policy." (*Hartford Fire Ins. Co. v. Spartan Realty International, Inc.* (1987) 196 Cal.App.3d 1320, 1325.)

Thus, cases have held, "where … one, while negotiating for coverage with the insurer's agent, properly brought all of the material facts relative to the transaction to his attention and specifically requested insurance coverage based thereon, was assured by the agent that such coverage could be, would be, and had been effected, and relied upon the agent's representation with the latter's knowledge, but through the agent's failure and neglect actually was not covered … the insurer, chargeable with the knowledge and acts of its agent, may be estopped thereafter to rely upon the existence of those facts to deny or defeat coverage." (*Beach v. United States Fidelity & Guaranty Co.* (1962) 205 Cal.App.2d 409, 413; see *Golden Gate Motor Transp. Co. v. Great American Indemnity*

*Co.* (1936) 6 Cal.2d 439, 448 [where the insured requested specific coverage for a particular car and explained the relevant facts to the agent, the insurance "company must be held bound to give the protection thus contracted for, and it cannot be permitted to perpetrate what would undoubtedly be a fraud on the insured by relying upon the exclusion clause of the policy"]; *Ames v. Employers Casualty Co.* (1936) 16 Cal.App.2d 255, 266 ["where, as here, the insurer makes a promise to write a certain specific coverage, the insured is entitled to rely thereon and the insurer is estopped from taking a different position"].)

More recently, *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847 (*Shade Foods*) held that an insurance carrier is "bound by its agent's interpretation of coverage under the policy," and an agent's authority to bind the principal "unquestionably extends to giving ambiguous contract provisions an interpretation that the insurer itself might reasonably adopt." (*Id.* at p. 874.) As the court explained it, the prospective insured "approached [the insurer]'s agent … with a need to secure insurance coverage for [certain produce] processed at his facility. [The agent] assured him, with a reasonable basis in contract language, that the insurance policy provided such coverage." (*Ibid.*) As a result, the court concluded, the insurer was "bound by its agent's interpretation of the contract." (*Ibid.*)

*Shade Foods* is perfectly analogous to the situation alleged in the FAC here. Plaintiff approached defendant Webb, AAA's agent, and explained that he was seeking life insurance "to provide coverage for all of his children in his household, some of which were not biologically related to him," and he disclosed the "blended mix of children" in his household. Plaintiff was then "informed that children did not need to be blood relatives, a step-child or legally adopted to be covered at the inception/binding of the policy." Construing the FAC liberally, as we must, these allegations indicate Webb assured plaintiff that the child term rider would cover all the children in his household, including Bowen. Further, as discussed above with regard to the FAC's claim for breach

18.

of express contract, there is a "reasonable basis" in the rider's eligibility definition to believe that the rider covered a child such as Bowen. (*Shade Foods*, *supra*, 78 Cal.App.4th at p. 874.)

Thus, the FAC alleges AAA, through Webb's imputed knowledge, knew the facts as to the scope of insurance coverage plaintiff was seeking (1st element); AAA, through Webb's assurance of expansive coverage, intended that plaintiff would purchase the rider (2nd element); plaintiff was ignorant of the purported fact that coverage was limited to children with a biological or specified legal relation to him (3rd element); and he paid to supplement the policy with the rider, to his detriment (4th element). (See *Komorsky*, *supra*, 33 Cal.App.5th at p. 972.)

Defendants argue that plaintiff had a duty to read the rider and was bound by its written terms, not Webb's alleged representations. Of course, an insured cannot simply claim ignorance of the relevant policy's terms in an attempt to manipulate the scope thereof. Representations that are "patently at odds" with a policy's express provisions will not trump the written contract since an insured will presumably reject a policy if, upon reading its terms, it clearly does not match up with the requested coverage. (*Hadland v. NN Investors Life Ins. Co.* (1994) 24 Cal.App.4th 1578, 1589 ["If the [insureds] had read [the express provisions], they would have discovered [the policy's] limitations [and] rejected it"].) However, here there is no indication plaintiff did not read the rider he purchased. Moreover, reading the written terms of the rider would not necessarily indicate to a reasonable insured that the terms were in conflict with Webb's alleged representations of coverage.

Accordingly, we will remand this matter for plaintiff to have the opportunity to file a further amended complaint asserting, in the alternative, a cause of action for breach of contract by estoppel.

## V. Reformation

Plaintiff argues he can properly assert a claim for reformation. Technically, reformation is a remedy, not a cause of action. (*Landis v. Superior Court* (1965) 232 Cal.App.2d 548, 555; *Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697, 713.) Still, when a claim seeks only reformation, the essential elements of the "claim" that must be pled are: (1) the "real" agreement the parties intended to execute; (2) the agreement as it was reduced to writing; (3) the grounds for reformation, whether fraud or mistake, and how it came about. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 807, pp. 222-223.) The plaintiff need not plead breach or damages.[9]

"Reformation is an equitable remedy the essential purpose of which is to ensure the contract, as reformed, reflects the parties' mutual intention." (*Komorsky*, *supra*, 33 Cal.App.5th at p. 974.) " 'Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected.' " (*Ibid.*; see Civ. Code, § 3399.) Whether pleading mutual mistake or unilateral mistake, the plaintiff must plead facts showing " 'how the mistake was made, whose mistake it was, and what brought it about.' " (*George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1133; see *id.* at pp. 1132-1133; *Komorsky*, *supra*, 33 Cal.App.5th at pp. 974-975.)

Plaintiff's opening brief offers only one sentence of substantive argument as to why leave to amend should be granted to seek reformation: "because if [Bowen] was not covered, then the policy does not express the true intent of the parties." Plaintiff does not specify whether his claim would be based on fraud, mutual mistake, or his own unilateral mistake, much less plead facts showing " 'how the mistake was made, whose mistake it was, and what brought it about.' " (*George v. Automobile Club of Southern California*, *supra*, 201 Cal.App.4th at p. 1133.) However, in his supplemental brief, plaintiff clarifies

---

[9] "Where a cause of action is based on failure to perform the intended agreement, the plaintiff may seek reformation and, in addition, damages for breach, specific performance, etc." (*Landis v. Superior Court*, *supra*, 232 Cal.App.2d at p. 555.)

his argument by asserting he can state a claim for reformation based on mutual mistake or his own unilateral mistake.

With regard to his supplemental argument in support of a claim for reformation based on mutual mistake, plaintiff states, "Mr. Lynn understood that Mahki would be considered by AAA as an Eligible Child." Plaintiff further notes: "The FAC shows that Mr. Lynn understood and believed that defendants, and each of them through Mr. Webb's assurances, had the same understanding as he did regarding Mahki qualifying as an Eligible Child because he was already living within Mr. Lynn's household as a member of his family, and he was already being supported as Mr. Lynn's child at the time the policy became effective." The FAC alleges that plaintiff had informed Webb of the status of the children in his blended family and when he contacted Webb after Bowen's death, Webb again assured him that the rider provided coverage for Bowen's death. These facts would support a claim that the parties had a mutual understanding as to the scope of the policy that was purchased but that their understanding was not adequately captured in the written contract, leading to the ultimate denial of plaintiff's insurance claim for Bowen's death. Plaintiff has thus met his burden to show he can further amend the FAC to plead, in the alternative, a claim for reformation based on mutual mistake. (See *Rakestraw*, *supra*, 81 Cal.App.4th at p. 43.)

In his supplemental brief, plaintiff also argues he can further amend his complaint to state a claim for reformation based on unilateral mistake. More specifically, he notes he can properly allege that Webb and AA "knew or suspected that Mr. Lynn misunderstood the [phrase] 'the Insured's … children' in the first paragraph of the Child Term Rider's definition of '[E]ligible Child' … as meaning that Mahki, though not his biological child, would be covered," because he had "specifically asked for coverage that included all of his children living in his household with him as his dependents, regardless of their blood relation." However, plaintiff's argument does not account for the fact that reformation is not the court *creating* a *new* agreement but rather *enforcing* the *actual*

21.

agreement *already made* by the parties. (*Ramseier v. Oakley Sanitary Dist*. (1961) 197 Cal.App.2d 722, 725.) Accordingly, plaintiff's argument that he can further amend the FAC to state a claim for reformation based on his own unilateral mistake is unavailing.

## VI. Breach of the Covenant of Good Faith and Fair Dealing

"The covenant of good faith and fair dealing implied in every contract assumes peculiar importance in insurance law because it may support the recovery of a tort measure of damages." (*Shade Foods*, *supra*, 78 Cal.App.4th at p. 879.) In a claim against an insurance carrier, there are two elements to establish breach of the implied covenant of good faith and fair dealing: (1) the carrier must have withheld benefits due under the policy, and (2) the reason for withholding benefits must have been unreasonable. (*Shusha, Inc. v. Century-National Ins. Co.* (2022) 87 Cal.App.5th 250, 267.)

In other words, the mere fact that an insurer withholds coverage based on an erroneous interpretation of the policy does not necessarily mean there was a breach of the covenant; to be liable in tort, the insurer must have acted *unreasonably*. (See *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 347; *Shade Foods*, *supra*, 78 Cal.App.4th at p. 879.) Conversely, if the insurer's reading of the policy is correct and no benefits were due in the first place, then there can be no breach of the covenant, absent improper claim handling to the detriment of the insured. (*Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1235-1236.) Although the reasonableness of an insurer's denial of benefits " 'is ordinarily a question of fact,' " a court " 'can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, as long as there existed a genuine issue as to the insurer's liability.' " (*Amadeo v. Principal Mutual Life. Ins. Co.* (9th Cir. 2002) 290 F.3d 1152, 1161 [applying California law]; *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, *supra*, 90 Cal.App.4th at p. 347 [genuine dispute doctrine].)

Here, the trial court sustained the demurrer as to plaintiff's first cause of action for breach of the covenant based on its view that the FAC failed to plead an underlying breach of contract—i.e., that no benefits were due for Bowen's death. Although we reversed, above, the trial court's dismissal of the FAC's cause of action for breach of contract on an express contract theory, defendants argue in the alternative that plaintiff cannot plead this tort claim (i.e., breach of the covenant) because AAA's interpretation of the rider was reasonable and therefore shielded by the genuine dispute doctrine. We agree with AAA, and since plaintiff does not propose he can plead additional facts as to bad faith that would require a factual determination of reasonableness, we affirm the trial court's dismissal of plaintiff's breach of covenant claim.

## VII.   Non-Contract Causes of Action

Plaintiff also argues we should reverse and remand for him to attempt to state four non-contract-based causes of action:  (A) fraud/intentional misrepresentation, (B) negligent misrepresentation, (C) negligence, and (D) violation of UCL 17200. Plaintiff attempted to assert the fraud and UCL 17200 claims in the FAC, but the trial court struck those causes of action "on its own motion," for exceeding the scope of amendment authorized by the court's order on the previous demurrer (i.e., on demurrer to the original complaint).  Plaintiff did not assert negligent misrepresentation or negligence causes of action (see *post*) in the trial court but seeks permission to do so for the first time on appeal.

Initially, we briefly address and reject plaintiff's argument that the trial court abused its discretion by striking the fraud and UCL claims, sua sponte, without considering their merits.  Striking these causes of action was within the trial court's discretion because plaintiff violated well-established rules of procedure that prohibit adding new causes of action after a demurrer without a noticed motion and leave of court. (See Code Civ. Proc., §§ 436, subd. (b) [authorizing sua sponte striking of all or part of

23.

pleading not filed in conformity with state laws, court rule, or an order of the court], 472 [amendment without leave], 473, subd. (a)(1) [requiring notice to adverse party for most pleading amendments]; see also *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.) Because Code of Civil Procedure section 436 authorizes the striking of a pleading due to improper *procedure*, the trial court had no duty to consider whether those causes of action stated a claim before striking them.

However, that is ultimately beside the point given that plaintiff can argue for leave to amend to state new causes of action, even for the first time on appeal, after an order sustaining a demurrer.[10] (See *Gutierrez*, *supra*, 19 Cal.App.5th at pp. 1244-1245; *Dudley*, *supra*, 90 Cal.App.4th at pp. 259-260.) We must therefore analyze, for ourselves in the first instance, whether the FAC states a claim or can be amended to state a claim for fraud, negligent misrepresentation, negligence, and violation of UCL 17200, respectively.

**Fraud**

The essential elements of fraud, generally, are: (1) a misrepresentation, that is, a false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "Each element must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action, although less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff." (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211.)

---

[10] Because the trial court sustained the demurrer as to the first and second causes of action without leave to amend, we need not decide whether it was an abuse of discretion to deny leave to amend as to the third and fourth causes of action stricken under Code of Civil Procedure section 436. Either way, we consider plaintiff's arguments as to his ability to further amend the complaint and reverse if he meets his burden on appeal.

In the one paragraph of argument in which plaintiff attempts to justify leave to amend as to fraud, he argues the FAC adequately pleads all elements, identifying the false representation as agent Webb's prepurchase assurance that all children in plaintiff's household would be covered under the rider. However, plaintiff omits any explanation of how it can be reasonably inferred from the FAC that Webb either intended to defraud plaintiff when he gave those assurances or knew them to be false. From the FAC's broad-strokes summary of plaintiff's prepurchase conversations with Webb, the most one can reasonably infer is that Webb either did not fully understand the nature of plaintiff's relationship to the children in his household or erroneously believed that the rider offered the coverage plaintiff desired.

Plaintiff does not propose any additional specific allegations he could make to satisfy these missing elements or to plead with particularity Webb's assertedly fraudulent statements to him. We therefore conclude plaintiff has not shown that he can further amend the FAC to state a cause of action for fraud.

**Negligent Misrepresentation**

"The elements of a negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' " (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1252.) Negligent misrepresentation differs from fraud in that (a) it does not require knowledge of a statement's falsity, but rather only lack of reasonable grounds for believing it to be true; and (b) it does not require intent to defraud, but rather simply intent to induce reliance on the fact misrepresented. (See *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173-174; *Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1061.) Like fraud, each element of a cause of action for negligent misrepresentation must be alleged with specificity. (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.)

In his supplemental brief, plaintiff notes that the FAC alleges that Webb assured plaintiff that under the rider, covered children "did not need to be blood relatives, a step-child or legally adopted to be covered at the inception/binding of the policy." Further, the FAC alleges that Webb told plaintiff that "all of the children under 19 years of age in his household as of the effective date of the policy would be covered under the Child Term Rider to the policy." The FAC thus indicates that plaintiff informed Webb about the status of the children in his "blended household," specified that he was seeking coverage for all of them, and received assurances that the standard child term rider offered by AAA met his needs. Plaintiff points out that the FAC also alleges that Webb made the representation of coverage with the intent of inducing plaintiff to enter into the contractual obligation of life insurance and to pay additional monthly premiums to AAA for the represented coverage under the child term rider. In addition, the FAC alleges that plaintiff reasonably relied on the representations made by Webb, to his detriment. Finally, plaintiff notes that since AAA ultimately denied coverage for Bowen, he can properly amend the complaint to allege, as an alternative claim for recovery, that Webb's assurances as to the scope of coverage constituted misrepresentations that were made without reasonable grounds for believing they were true and with the intent to induce plaintiff's reliance thereon.

*Clement v. Smith* (1993) 16 Cal.App.4th 39 (*Clement*) is instructive. The court there upheld a judgment for the plaintiff against an insurance agent and the insurer on a theory of negligent misrepresentation based on statements made by the agent assuring the plaintiff he had insurance coverage which he did not in fact possess. (*Id*. at p. 42.) In *Clement*, the agent told the insured he would have coverage that the insured specifically asked about, and the agent's "broad statements" about the existence of coverage that did not exist were determined to constitute substantial evidence of a misrepresentation. (*Id*. at p. 44.) *Clement* further explained: "When dealing with a contract as adhesive as the typical insurance policy, we are unwilling to impose on the insured so onerous a burden

as would automatically defeat any agent's liability for misrepresentation. Certainly an insured cannot remain intentionally ignorant of the terms of his or her policy. Here, however, we have a factual finding by the trial court that [the insured] reasonably relied on [the agent's] representation of coverage." (*Id*. at p. 45.)

We conclude plaintiff has shown he can further amend the FAC to plead, in the alternative, a claim for negligent misrepresentation.

**Negligence**

The elements of a negligence claim are " 'a legal duty of care, breach of that duty, and proximate cause resulting in injury.' " (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 831; *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142 ["A plaintiff in any negligence suit must demonstrate ' "a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury." ' "].)

"An insurance agent has an 'obligation to use reasonable care, diligence, and judgment in procuring insurance requested by an insured.' " (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1119 (*Desai*).) This duty is triggered when (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided, (b) there is a request or inquiry by the insured for a particular type or extent of coverage, *or* (c) the agent holds himself out as having special expertise in the field of insurance being sought. (See *Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 927; *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090, 1096-1097; *Murray v. UPS Capital Ins. Agency, Inc*. (2020) 54 Cal.App.5th 628, 639; *Desai*, *supra*, 47 Cal.App.4th at p. 1119.) Also, " '[t]he law is well established in California that an agent's failure to deliver the agreed-upon coverage may constitute actionable negligence and the proximate cause of an injury. [Citations.]' [Citations.] Moreover, the insurer may be held vicariously liable for the negligence of the agent." (*R&B Auto Center, Inc. v. Farmers Group, Inc*. (2006) 140 Cal.App.4th 327, 337; *Desai*, at p. 1120 ["A broker's failure to

obtain the type of insurance requested by an insured may constitute actionable negligence and the proximate cause of injury."].)

In his supplemental brief, plaintiff asserts he should be granted leave to amend the FAC to plead a negligence cause of action against Webb and AAA. Defendants argue that negligence claims cannot lie against either insurers or their agents acting within the scope of their employment—while simultaneously acknowledging the rule that insurers and agents develop a special duty of care to insureds in the scenarios noted above.

Plaintiff argues that the allegations in the FAC "are sufficient to show" that here Webb, and by extension AAA, owed him an actionable or a special duty of care. The FAC alleges that Webb held himself out as a specialist in life insurance policies and that plaintiff asked Webb particular questions about the terms of AAA's life insurance policy, specifically whether the child term rider would provide coverage for the "blended mix of children" in his household. The FAC further alleges that plaintiff informed Webb that Bowen was not his biological child but was a dependent child living with him as part of his family, and that he desired to purchase life insurance that would provide coverage for all the children in his household, including Bowen. The FAC alleges that Webb informed plaintiff that "children did not need to be blood relatives, a step-child or legally adopted to be covered at the inception/binding of the policy." The FAC alleges plaintiff purchased the policy believing it covered Bowen, among the other children. When Bowen died while the policy was in effect, AAA denied coverage for Bowen's death— the precise loss that plaintiff had inquired about and received assurances about—causing plaintiff to incur damages.

Plaintiff concludes: "Accordingly, the FAC alleges adequate facts to show a [special] duty of care, breach of that duty, causation, and damages." We agree.

**UCL Section 17200, et seq.**

As the fourth cause of action, the FAC asserts a violation of California's UCL, Business and Professions Code section 17200 et seq. (UCL 17200), which prohibits

28.

"unfair competition," defined (as relevant here) as "any unlawful, unfair or fraudulent business act or practice." As seen from the disjunctive phrasing, UCL 17200 encompasses three varieties of unfair competition: " 'acts or practices which are unlawful, or unfair, or fraudulent.' " (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1133; see *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 ["Unfair and fraudulent practices are alternate grounds for relief."].)

Each variety, or prong, carries its own definitions and rules. For instance, to state a cause of action under the "unlawful" prong, "a plaintiff must allege facts sufficient to show a violation of some underlying law." (*Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at p. 1133.) However, no predicate violation of underlying law is required to proceed under the "fraudulent" prong. Rather, to qualify as a fraudulent business act or practice, "it is necessary only to show that the plaintiff was likely to be deceived and suffered economic injury as a result of the deception." (*Zhang v. Superior Court*, *supra*, 57 Cal.4th at p. 380.) UCL claims based on fraudulent acts or practices are subject to "a more lenient standard for pleading" than common law fraud claims. (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1115, review den. Jan. 25, 2023, S277693); see *Gutierrez*, *supra*, 19 Cal.App.5th at p. 1261 [adopting an intermediate requirement of "reasonable particularity"].)

"A UCL claim based on the fraudulent prong can be based on representations that deceive because they are untrue, but ' " ' "also those which may be accurate on some level, but will nonetheless tend to mislead or deceive....' " ' " (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1255.) " '[U]nless we can say as a matter of law that … members of the public were *not* likely to be deceived or misled by [the defendant's alleged conduct], we must hold that [the plaintiff] stated a cause of action." (*Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 333.)

Here, in his opening brief, plaintiff provides one conclusory paragraph arguing that under the same facts and circumstances outlined earlier in his brief, the FAC states a

cause of action for violation of the UCL. He does not specify under which prong he wishes to assert a UCL claim, nor does he explain what business practice or act he wishes to challenge as unlawful, unfair, or fraudulent. The FAC, however, asserts that "if [the] court were to accept" AAA's "overly restrictive interpretation" of the rider, that is, that the rider did not cover, as of its effective date, children with the type of relationship to the insured as Bowen had to plaintiff, then Webb's representations to the contrary "constitute false and or fraudulent representations in the sale of good[s] or services."

This clarification regarding plaintiff's UCL claim, when combined with the FAC's related factual allegations of Webb's pre-purchase assurances regarding the scope of coverage, would appear to be sufficient to state a claim for violation of UCL 17200. Were Webb to similarly inform any member of the public that children "did not need to be blood relatives, a step-child or legally adopted to be covered at the inception/binding of the policy," that person would likely be deceived or misled—assuming the rider is ultimately found to contain limitations to the contrary. Although there is no allegation that Webb habitually made such representations to inquiring customers, since 1992 the UCL has covered "single act[s] of misconduct," not just patterns of wrongful conduct. (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 968, fn. 3.) Accordingly, on remand, plaintiff may further amend the FAC to assert a cause of action under UCL 17200.

## DISPOSITION

The judgment of dismissal is reversed. The matter is remanded with instructions to the trial court to vacate the order sustaining the demurrer without leave to amend and to enter a new order (1) overruling the demurrer to the breach of contract (express contract theory) cause of action and (2) sustaining the demurrer to the breach of the covenant of good faith and fair dealing cause of action with leave for plaintiff to further amend his complaint to allege, if he is able, causes of action against AAA for breach of contract by estoppel, against AAA and Webb for violation of Business and Professions

30.

Code section 17200 et seq., against AAA and Webb for negligent misrepresentation, against AAA and Webb for negligence, and for reformation based on mutual mistake. The parties shall bear their own costs on appeal.

SMITH, J.

WE CONCUR:

DETJEN, Acting P. J.

FRANSON, J.